**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BONNIE RETALIC f/k/a Bonnie Kozimor,**

        **Plaintiff,**

-vs-                                                                               Case No.  6:07-cv-1268-Orl-31DAB

**DONALD ESLINGER, MICHAEL
TIDWELL, DAVID DIGGS, and
SEMINOLE COUNTY,**

        **Defendants.**

## ORDER

This matter comes before the Court on the motion to dismiss filed by Defendant Seminole County (Doc. 9) and the response (Doc. 12) filed by the Plaintiff.  The County seeks dismissal of this Section 1983 suit on the grounds that it cannot be held vicariously liable for the actions of employees of the Seminole County Sheriff's Office, because the Sheriff is an independent constitutional officer.  In the alternative, the County argues that if the Sheriff and his deputies are found to be county employees, it cannot be held responsible for their allegedly unconstitutional actions unless those actions resulted from an official county policy, and there are no allegations in the complaint to support such a conclusion.  Finally, the County argues that the Sheriff cannot establish policy for the County, as the County has never formally designated him to be a policymaker pursuant to Florida Statute § 951.061.

In support of its first point, the Count asserts that the Sheriff is a "constitutional officer under Art. 8, § 4 of the Florida Constitution" and therefore "independent from the Seminole

County government".[1] The County also cites several Florida statutes that give county sheriffs the power to hire and fire deputy sheriffs, to set their salaries, and to propose a budget to the Board of County Commissioners that includes proposed salaries for deputies and assistants. Even under the most charitable reading, these statutes in no way suggest that county sheriffs are legally independent of the counties they serve, or that counties are *per se* immune from liability for the misdeeds of deputy sheriffs. The Supreme Court's decision in *McMillian v. Monroe County*, 520 U.S. 780 (1997), in which an Alabama sheriff was found to be an officer of the state, rather than the county, is inapposite here. That decision rested on provisions of Alabama law entirely unlike the Florida law cited by Seminole County. For example, the Alabama Constitution establishes a state executive department consisting of, *inter alia*, a governor, lieutenant governor, attorney-general, and a sheriff for each county. *McMillian* at 787 (citing Ala. Const. of 1901, Art. V, § 112). Seminole County cannot point to an equivalent provision in the Florida Constitution. To the contrary, Art. 8, § 1(d) of the Florida Constitution establishes the sheriff as a "county officer," along with the property appraiser and tax collector, among others.

Seminole County's second argument is no more well-founded. The County disputes the existence of any policy that allegedly resulted in the violation of Plaintiff 's constitutional rights

---

[1]Art. 8, § 4 of the Florida Constitution provides that

By law or by resolution of the governing bodies of each of the governments affected, any function or power of a county, municipality or special district may be transferred to or contracted to be performed by another county, municipality or special district, after approval by vote of the electors of the transferor and approval by vote of the electors of the transferee, or as otherwise provided by law.

Seminole County offers no explanation as to how this provision allegedly establishes the independence of its sheriff.

and calls the allegations as to the existence of such a policy "conclusory." After reviewing the complaint, the Plaintiff's allegations regarding the strip search and extended detention, as well as the policy that caused them, are sufficiently specific for purposes of Section 1983.

The County argues that the Plaintiff is seeking to impose vicarious liability upon it in violation of *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). However, the Plaintiff has alleged that the Sheriff is a policy maker for the County, that the County has delegated jail policy-making to the Sheriff, and that the Sheriff authorized or acquiesced in the custom, policy or practice that resulted in the constitutional violations. These allegations are fatal to the County's *Monell* argument.

Finally, the County contends that the Sheriff is not a policy-maker for it, because it has never designated a policy-maker for the jail. At its core, this is a factual dispute, not appropriate for resolution at this point in the proceedings. Moreover, the case cited by the County as establishing that it cannot be held liable for the Sheriff's actions unless it has designated him as its chief corrections officer is unpersuasive. *Baugher v. Alachua County*, 305 So. 2d 838 (Fla. 1st DCA 1975), was a wrongful death case under state law in which one prisoner was murdered by another jail inmate. There was no allegation in *Baugher* that the sheriff was a county policy-maker, or that any county policy caused the murder. Rather, the *Baugher* court addressed a county's responsibility "for the day-to-day operation of the jail, including the designation of which prisoners are to be placed in particular cells within the jail." *Id*. at 839. Simply stated, the *Baugher* court held that under Florida law, the county sheriff traditionally operates the county jail, and the county's ownership of a jail, alone, does not make it responsible for every decision made

by those operating it. *Id.* But this decision does not aid Seminole County, as its liability here would be based on its own (alleged) policies, not mere ownership of the jail.

In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that the motion to dismiss filed by Defendant Seminole County (Doc. 9) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on September 20, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party